JAMES A. MARISSEN (SBN: 257699)
jmarissen@grsm.com
RACHEL A. WEITZMAN (SBN: 307076)
rweitzman@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614
Telephone: (949) 255-6996
Facsimile: (949) 474-2060

Attorneys for Plaintiff
CMA CGM ASIA SHIPPING PTE. LTD.
f/k/a APL CO. PTE. LTD.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CMA CGM ASIA SHIPPING PTE. LTD. f/k/a APL CO. PTE. LTD.<br><br>Plaintiff,<br><br>vs.<br><br>TRANSFORM HOLDCO LLC; TRANSFORM SR HOLDING MANAGEMENT LLC; TRANSFORM SR BRANDS LLC dba TRANSFORMCO,<br><br>Defendants. | CASE NO.<br><br>**PLAINTIFF CMA CGM ASIA SHIPPING PTE. LTD. f/k/a APL CO. PTE. LTD.'S COMPLAINT** |

COMES NOW Plaintiff CMA CGM ASIA SHIPPING PTE. LTD. f/k/a APL CO. PTE. LTD. ("APL"), and its Complaint and causes of action against Defendants TRANSFORM HOLDCO LLC, TRANSFORM SR HOLDING MANAGEMENT LLC, and TRANSFORM SR BRANDS LLC dba TRANSFORMCO (collectively "TRANSFORM") and alleges as follows:

## JURISDICTION AND VENUE

1. This is a maritime claim for breach of contract and unpaid detention, demurrage, destruction and/or other costs pursuant to ocean bills of lading and/or

1  ocean service contract and/or an ocean carrier's tariff and comprises an admiralty
2  and maritime claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure
3  and 28 U.S.C. § 1333(1).  It also presents a federal question under 28 U.S.C. §
4  1331 in that it arises under the Shipping Act of 1984, as amended, 46 U.S.C. §§
5  40101 et seq.

6  2. In the alternative, as there is complete diversity between APL on one
7  hand and TRANSFORM on the other hand, and the amount in controversy exceeds
8  jurisdictional amount set by 28 U.S.C. § 1332, the prerequisites for diversity
9  jurisdiction under 28 U.S.C. § 1441(b) are met and this Court is vested with subject
10 matter jurisdiction over this action.

11 3. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) in that a
12 substantial part of the events or omissions giving rise to the claim occurred within
13 this district.

**PARTIES**

15 4. Plaintiff CMA CGM ASIA SHIPPING PTE. LTD. f/k/a APL CO.
16 PTE. LTD. is now, and at all material times was, a foreign corporation duly
17 organized and existing under the laws of Singapore, with a principal place of
18 business at 9 North Buona Vista Drive, #14-01 The Metropolis Tower 1, Singapore
19 138588. CMA CGM ASIA SHIPPING PTE. LTD. is the successor in interest to
20 APL.  APL was an ocean carrier and common carrier of goods for hire on ocean-
21 going vessels between United States ports and foreign ports.

22 5. Defendants TRANSFORM HOLDCO LLC, TRANSFORM SR
23 HOLDING MANAGEMENT LLC, and TRANSFORM SR BRANDS LLC dba
24 TRANSFORMCO, are now, and at all material times were, corporations organized
25 and existing under the laws of Delaware, with their principal place of business at
26 93333 Beverly Road, Hoffman Estates, Illinois 60179.  TRANSFORM is the
27 successor in interest, parent and/or agent of and for KMART CORPORATION and
28 SEARS ROEBUCK & CO.  As such, as set forth in this Complaint,

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

TRANSFORM, KMART CORPORATION and SEARS ROEBUCK & CO. will collectively be referred to herein as TRANSFORM.

6. APL alleges that there may be additional entities or individuals that may be responsible in some manner for the occurrences and injuries alleged in this Complaint. Their names and capacities are currently unknown to APL at this time. APL will amend this Complaint to add such additional parties when the same have been ascertained. APL is informed, believes and thereon alleges that each additional entity or individual is liable for the acts and/or omissions as set forth below, and that APL's rights against such additional entity or individual arises from such acts and/or omissions.

## FACTUAL BACKGROUND

7. Between August and October 2018, TRANSFORM contracted with APL for the shipment of thirty-nine (39) containers ("Containers") of various cargoes of garments from Chittagong, Bangladesh to Mira Loma, California via the port of San Pedro, California.

8. APL subsequently issued ninety-five (95) APL Bills of Lading ("APL Bills") for the carriage of the Containers as summarized in the attached Exhibit A.

9. APL carried the Containers from Chittagong, Bangladesh to Mira Loma, California pursuant to the terms and conditions of the relevant APL Bills of Lading and/or applicable service contracts.

10. At all material times, TRANSFORM was a "Merchant" pursuant to Clause 1 of the Standard Terms and Conditions applicable to the APL Bills as they were the owner of the cargo within the Containers and/or persons entitled to the possession of the cargo or having a present or future interest in the cargo and/or the servants and agents of any of these.

11. TRANSFORM was the entity for whose account the transportation services were provided by APL, were the parties that received and benefitted from

PLAINTIFF CMA CGM ASIA SHIPPING PTE. LTD. f/k/a APL CO. PTE. LTD.'S COMPLAINT

1 the transportation services provided by APL, and were the entities responsible for
2 payment of charges relating to the Containers.

3     12.    The Containers were tendered to APL on behalf of TRANSFORM for
4 transportation to Mira Loma, California for which freight and other charges were
5 lawfully incurred pursuant to the terms of the APL Bills of Lading and/or
6 applicable service contracts and/or applicable marine tariff(s).

7     13.    APL's Bill of Lading Standard Terms and Conditions (as applicable to
8 the relevant APL Bills of Lading) provides the following:

> **"Merchant"** includes the Shipper, Consignee, Receiver, Holder of the Bill of Lading, Owner of the cargo or Person entitled to the possession of the cargo or having a present or future interest in the Goods and the servants and agents of any of these, all of whom shall be jointly and severally liable to the Carrier for the payment of all Freight, and for the performance of the obligations of any of them under this Bill of Lading.
>
> ...
>
> **11.     NOTIFICATION AND DELIVERY**
>
> ...
>
> (2) The Merchant shall take delivery of the Goods within the time provided for in the Carrier's Applicable Tariff (see Clause 2). If the Merchant fails to do so the Carrier shall be entitled, without notice, to unpack the Goods if packed in Containers and / or to store the Goods ashore, afloat, in the open or under cover, at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon the liability of the Carrier in respect of the Goods stored as aforesaid shall cease, and the costs of such storage (if paid or payable by the Carrier or any agent or Sub-Contractor of the Carrier) shall forthwith upon demand be paid by the Merchant to the Carrier.
>
> (3) If, whether by act or omission, the Merchant directly or indirectly prevents, delays or hinder the discharge or the delivery of the Goods, any costs, expenses or liability so resulting shall be for its full account.
>
> (4) If the Merchant fails to take delivery of the Goods within ten days of delivery becoming due under Clause 11 (2), or if in the opinion of the Carrier they are likely to deteriorate, decay, become worthless or incur charges whether for storage or otherwise in excess of their value,

the Carrier may, without prejudice to any other rights which he may have against the Merchant, without notice and without any responsibility whatsoever attaching to him, sell, destroy or dispose of the Goods and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant in respect of this Bill of Lading.

…

### 13. LIEN

The Carrier, its servants or agents shall also have a lien on and the right to sell whether privately or by public auction, the Goods carried under this Bill of Lading and any documents relating thereto, for all sums including Freight and charges including but not limited to primage, deadfreight pre-carriage and/or inland Carriage whatsoever, demurrage, container demurrage and storage charges, detention charges, salvage, general average contribution, due and outstanding, which are for the account of the Goods or any other Contracts for the Carriage of Goods concluded between the Carrier, its servants or agents and the Merchant, at any time where such sums or Freights remains due and unpaid; and for the costs and expenses of exercising such lien and/or of such sale.

If the goods are unclaimed during a reasonable time, or whenever in the Carrier's opinion, the Goods are likely to become deteriorated, decayed or worthless, the Carrier may, at its discretion without responsibility whatsoever, auction, sell, abandon or otherwise dispose of such Goods solely at the risk and expense of the Merchant. Nothing in this Clause shall prevent the Carrier from recovering from the Merchant the difference between the amount due to him by the Merchant and the amount realised by the exercise of the rights given to the Carrier under this Clause.

. . .

### 26. SHIPPER'S / MERCHANT'S RESPONSIBILITY

(1) All of the Persons coming within the definition of Merchant in Clause 1 shall be jointly and severally liable to the Carrier for the due fulfilment of all obligations undertaken by the Merchant in this Bill of Lading, and remain so liable throughout Carriage notwithstanding their having transferred this Bill of Lading and/or title to the Goods to any third party. Such liability shall include but not be limited to court costs, expenses and attorney's fees incurred in collecting charges and sums due to the Carrier.

(2) The Shipper warrants to the Carrier that the particulars relating to the Goods as set out overleaf have been checked by the Shipper on receipt of this Bill of Lading and that such particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct. The Shipper also warrants that the Goods are lawful Goods and contain no contraband.

(3) The Merchant shall indemnify the Carrier against all loss, damage, fines and expenses arising or resulting from any breach of any of the warranties in Clause 26 (2) hereof or from any other cause in connection with the Goods for which the Carrier is not responsible.

. . .

**29. SUB-CONTRACTING AND INDEMNITY**

. . .

(5) The Merchant further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any Person other than in accordance with the Terms and Conditions of this Bill of Lading which imposes or attempts to impose upon the Carrier any liability whatsoever in connection with the Goods or the Carriage of the Goods, whether or not arising out of negligence on the part of the Carrier and, if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof.

14. As set forth in Exhibit A, and in accordance with the APL Bills, APL discharged the Containers in San Pedro, California between October 3, 2018 and November 16, 2018, and all were made available for collection.

15. TRANSFORM failed to take delivery of the Containers and/or provide any other shipping instructions.

16. Having affected delivery of the Containers to California, APL fully performed all of its obligations under the APL Bills of Lading.

17. TRANSFORM paid various daily and other charges including detention and demurrage up to and including April 25, 2019. After which, TRANSFORM failed to take delivery of the containers and failed to pay the continued charges for detention and demurrage.

18. As TRANSFORM failed to take delivery of the Containers, APL exercised its rights under the APL Bills and sold the cargo in the Containers, for a total of US$220,000.

19. Due to TRANSFORM's failure to take delivery of the Containers, and failing to pay the daily charges, including detention and demurrage, after April 25, 2019, APL incurred damages, liabilities, charges, expenses, fees and costs for detention, demurrage, and the salvage of the cargo in the Containers totaling $2,633,477.50.

20. Under the terms of the APL Bills and/or service contracts and/or applicable tariffs, TRANSFORM is obligated to pay the costs, damages, and expenses due and owing to APL, minus the amount obtained in salvage, for a total of $2,413,477.66.

21. APL fully performed all of its obligations under the APL Bills and/or applicable service contracts. TRANSFORM received and benefited from the transportation services provided by APL, and is responsible for payment of all these various damages, expenses and costs relating to the Containers.

22. Due to TRANSFORM's failure to take delivery of the Containers, certain shippers including AJ Supergarments Ltd., Feroza Garments Ltd., MNC Apparels Ltd., Nassa Basics LTD, Nassa Knit Ltd, Toy Woods (BD) Co., Ltd and Western Dresses Ltd. (collectively "Nassa Group") has asserted claims in the courts Bangladesh against APL for failure to deliver the cargo.

23. As such, TRANSFORM is liable for any judgment against APL as a result of the Nassa Group's claims against APL pursuant to clauses 26(3) and 29(5) of the terms and conditions of the APL Bills.

## FIRST CAUSE OF ACTION

(For Breach of Maritime Contract)

24. APL refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 23 above.

25. APL transported and carried the Containers at the request of and for the benefit of TRANSFORM, in accordance with the applicable terms and conditions of the APL Bills and/or applicable service contracts.

26. APL fully performed all of its obligations under the APL Bills and/or applicable service contracts and carried the Containers from Chittagong, Bangladesh and successfully discharged the Containers in California.

27. Under the applicable terms and conditions of the APL Bills and applicable service contracts, TRANSFORM was required to provide shipping instructions and/or accept delivery for the Containers within the time provided for in APL's Bills, and agreed to be responsible and liable for any and all damages, liabilities, charges, costs, expenses and fees arising from or resulting from its failure to provide shipping instructions and/or accept delivery of the Containers.

28. Under the applicable terms and conditions of the APL Bills and applicable service contracts, TRANSFORM agreed to be liable and responsible for any and all detention, demurrage, and other charges due under the APL Bills.

29. TRANSFORM breached the applicable terms and conditions of the APL Bills and/or applicable service contracts by failing to provide shipping instructions and/or accept delivery of the Containers, and by failing to pay APL the damages, liabilities, detention, demurrage, and other related expenses and fees arising from their breach or breaches of the applicable terms and conditions of the APL Bills and/or service contracts.

30. As a proximate cause of TRANSFORM's breach or breaches of the applicable terms and conditions of the APL Bills and/or applicable service contracts, breach of warranty, and the matters set forth herein, APL has incurred, and TRANSFORM is liable to APL for, damages in the amount of $2,413,477.66. Additional charges continue to accrue including attorneys' fees, costs and expenses incurred in collecting said charges.

## SECOND CAUSE OF ACTION

(Money Due Under Marine Tariff)

31. APL refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 30 above.

32. APL transported and carried the Containers at the request and for the benefit of TRANSFORM, and in accordance with the terms and conditions of the APL Bills and subject to the rates and charges in its marine tariffs on file with the Federal Maritime Commission.

33. Under the said marine tariffs, APL is entitled to recover from TRANSFORM all unpaid demurrage, detention, destruction, and any other damages, liabilities, charges, penalties, costs, expenses and fees arising from the carriage of the Container, as well as TRANSFORM's failure to provide required shipping instructions and/or accept delivery of the Containers.

34. Despite demand for payment, TRANSFORM failed to pay APL amounts due under the marine tariffs and tariff compensation is due, owing and unpaid to APL from TRANSFORM in the amount of $2,413,477.66. Additional charges continue to accrue including attorneys' fees, costs and expenses incurred in collecting said charges.

## THIRD CAUSE OF ACTION

(Negligence)

35. APL refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 34 above.

36. At all material times herein, TRANSFORM owed APL a legal duty to exercise due care to provide required shipping instructions and/or to accept delivery of the Containers in California.

37. The legal duty of TRANSFORM to APL arose because TRANSFORM is a "merchant" under the APL Bills.

38. The legal duties of TRANSFORM to APL also arose independently of the APL Bills and/or applicable service contracts because of many factors,

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

including, without limitation, the foreseeability of harm to APL from its acts and omissions, the degree of certainty that APL suffered injuries, the closeness of the connection between TRANSFORM's conduct and the injury suffered.

39. TRANSFORM breached its duty of care by, inter alia, failing to provide required shipping instructions and/or accept delivery of the Containers in California, or otherwise arranging for the Containers' delivery.

40. As a proximate result of the negligence of TRANSFORM, APL has incurred, and TRANSFORM is liable to APL for, additional freight, demurrage, detention, liabilities, charges, penalties, costs, expenses and fees in an amount of $2,413,477.66. Additional charges continue to accrue including attorneys' fees, costs and expenses incurred in collecting said charges.

## FOURTH CAUSE OF ACTION
(Contractual Indemnification)

41. APL refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 40 above.

42. APL is in no way responsible for the losses or damages which the Nassa Group sought from APL. Rather it was the acts, omissions, fault, negligence, misconduct or actionable activity of TRANSFORM which caused the Nassa Group's losses or damages.

43. As the Nassa Group has sought payment from APL, APL now alleges that the acts, omissions, fault, negligence, misconduct or other actionable activity of TRANSFORM, as described herein, was active, primary, and affirmative, and that any negligent or other actionable conduct or activity on the part of APL, if any, was at most only passive, derivative, and secondary.

44. Under Clauses 26(3) and 29(5) of the standard terms and conditions applicable to the APL Bills, TRANSFORM must indemnify APL for any loss or damage which the Nassa Group as sought from APL.

45. Accordingly, APL is entitled to total or partial indemnification from TRANSFORM such that APL can recoup from and be reimbursed by TRANFORM all sums that APL may pay to the Nassa Group, being any sum in excess of APL's proportionate share of liability, if any.

46. As a direct, legal and proximate result of the acts, omissions, fault, negligence, misconduct or other actionable activity of TRANSFORM as described herein, APL has incurred and paid expenses for its response to the Nassa Group's claims including, without limitation, attorneys' fees, expenses, and damages. APL will also incur future attorneys' fees, expenses and damages throughout the pendency of this action.

47. Based on the foregoing, APL is entitled to be indemnified and held harmless by TRANSFORM for APL's attorneys' fees, expenses, and damages that APL has paid or incurred as direct, legal and proximate result of the acts, omissions, fault, negligence, misconduct or other actionable activity of TRANSFORM as described herein. The above expenses are continuing and in an amount presently unknown to APL. Accordingly, APL prays for leave to amend this Complaint to assert the true amount of such expenses when APL has ascertained the same.

## PRAYER

WHEREFORE, APL prays for judgment against TRANSFORM as follows:

1. That the Court order judgment in favor of APL and against TRANSFORM, in an amount not less than $2,413,477.66 caused by TRANSFORM's breach or breaches of the APL Bills and/or applicable service contracts, and/or applicable marine tariffs, and/or negligence, and/or for all amounts due under APL's marine tariffs, as well any additional damages and costs that continue to accrue at an amount to be established at trial;

2. That the Court award APL its attorneys' fees, costs and expenses incurred as a result of TRANSFORM's breach or breaches and/or in collecting the sums due from TRANSFORM;

3. That the Court award APL interest on all of the above as well as its costs of suit;

4. That the Court order TRANSFORM to indemnify APL for all sums that APL must pay to the Nassa Group and for all attorney's fees, costs and expenses incurred as a result of the Nassa Group claim, to be shown at trial; and

5. That the Court award such other and further relief as the Court deems just and proper.

Dated: April 22, 2022

GORDON REES SCULLY MANSUKHANI, LLP

By: /s/ *James A. Marissen*
James A. Marissen
Rachel A. Weitzman
*Attorneys for Plaintiff*
*CMA CGM ASIA SHIPPING PTE. LTD. f/k/a APL CO. PTE. LTD.*